Kresta Nora Daly, SBN 199689
**BARTH DALY LLP**
PO Box F
Winters, CA 95694
Telephone: (916) 440-8600
Facsimile: (916) 440-9610
Email: kdaly@barth-daly.com

Richard G. Novak, SBN 149303
**Law Offices of Richard G. Novak**
65 N. Raymond Avenue, Suite 320
Pasadena, CA 91103
Telephone: (626) 578-1175
Facsimile: (626) 685-2562
Email: richard@rgnlaw.com

Attorneys for Defendant
JASON CORBETT

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>JASON CORBETT,<br><br>            Defendant. | Case No. 2:19-CR-00107-KJM<br><br>**NOTICE OF MOTION AND MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY THE GOVERNMENT SHOULD NOT BE HELD IN CONTEMPT**<br><br>EVIDENTIARY HEARING REQUESTED |

To Philip Talbert, Acting United States Attorney, and Jason Hitt, Ross Pearson, and David Spencer, Assistant United States Attorneys:

Notice is hereby given that on December 6, 2021 defendant Jason Corbett, by and through his counsel of record, will move this Court for an order holding the government in contempt on this Court's July 8, 2020 ruling. Exhibit A, ECF. 510.

This motion is based on the instant motion, the attached Memorandum of Points and Authorities, evidence previously submitted to the Court, and any argument or evidence before or at the hearing of this motion. Mr. Corbett requests an evidentiary hearing on any facts disputed by the government.

November 8, 2021

                                                                                 _____

Richard Novak

Kresta Nora Daly

Attorneys for Jason Corbett

**I. Procedural History**

On July 8, 2020 this Court issued an order requiring the defendants in this case have access to confidential attorney-client interview booths and confidential phone calls. In the intervening 16 months the government appears to have ignored this order and the significant constitutional interests that order seeks to protect.

This case was indicted on June 14, 2019. ECF 25. Mr. Corbett was arraigned on July 1, 2019. ECF. 76. On August 20, 2019 Mr. Corbett and his co-defendants submitted a status report. In that report Mr. Corbett complained the attorney-client visiting booths were not confidential. Exhibit B, ECF. 148 at 2. He also complained about a lack of access to confidential phone calls with his lawyers. Exhibit B, ECF. 148 at 4.

On September 11, 2019 Mr. Corbett filed a Motion re Conditions of Confinement. Exhibit C, ECF. 189. On October 23, 2019 the Court heard argument on this motion. The Court deferred ruling and instead ordered the parties to meet and confer to "see if they could narrow the issues, and submit a joint statement outlining either their joint or respective positions no later than December 6, 2019." ECF. 270. The parties timely filed their joint statement. Exhibit D, ECF. 320.

On January 7, 2020 the defendants again filed a status memorandum. Exhibit E, ECF. 344. That memorandum again reiterated the fact that the defendants were being denied access to confidential meetings and phone calls with their lawyers. On March 25, 2020 the defendants again filed a status report detailing the on-going, unabated problems with the visiting booths and the fact that the booths were not confidential and therefore failed to meet constitutional standards. Exhibit F, ECF. 389.

On June 10, 2020 Mr. Corbett submitted another status report. Exhibit G, ECF. 482. Attached to that status report was an exhibit, internally labeled Exhibit A. That exhibit was a response from the Sheriff's Department to a grievance submitted by one of the defendants in this case. In that grievance the Sheriff's department admitted the booths were not confidential, rather they were 'sound reduced'.

On July 8, 2020 this Court, in response to issues raised by Mr. Corbett and others, issued an order which, in relevant part, stated:

For the foregoing reasons, the court ORDERS as follows:

1. In person visits with attorneys must be conducted in a way that the content of the conversations is not audible outside the visitation booth.
2. Defendants calls to attorneys must not be recorded.
3. Defendants must be allowed to make phone calls to their attorneys in a way that prevents third parties from overhearing them.
4. Legal mail may be opened and inspected in front of the defendants, but must not be read for content as required under *Nordstrom*, 762 F. 3d at 910.  If legal papers must be inspected for contraband, the inspection must happen in the presence of the defendant to allow verification that the papers are not being read for content.

Exhibit A, ECF. 510[1].

On July 21, 2020 the defendants submitted a status report detailing the lack of confidentiality at the jail.  Exhibit H, ECF. 543.   On August 20, 2020 the defendants submitted yet another status memorandum making the same complaints.  Exhibit I, ECF. 580.  This status memorandum contained exhibits showing this Court's July 8, 2020 order was served on the Sacramento County Sheriff's department.  That status report also contained copies of letters sent to the Sheriff.

On April 16, 2021 Mr. Corbett submitted a request for a court order to permit an industrial hygienist to access the only available interview booth on 8 west in the Sacramento County Jail.  Exhibit J, ECF. 753.  The motion contained exhibits from numerous defense teams involved in this case.  Each of those exhibits detailed the lack of confidentiality in the visiting booths.  On June 3, 2021 Mr. Corbett submitted an additional exhibit in support of his motion.  That exhibit contained the Sheriff department's suggestions for how to have a confidential attorney-client visit – the sheriff's department recommended the parties lower their voices.  Exhibit K, ECF. 797.  In government filed a reply brief, Exhibit L, ECF. 783, in which they abandoned their claim that the attorney-client visiting booth is confidential although they did maintain their claims that the phone boxes are confidential[2].

---

[1] By way of his motion, Mr. Corbett seeks to enforce 1 and 3.  The entirety of the order was included to avoid confusion.

[2] That claim is easily proved wrong by the photos the US Attorney's office attached to their motion showing the phones are in hallways – any passer-by can over hear.  The phones are located near intercoms which deputies utilize and can hear someone talking on the phone and the cells of co-defendants who can hear every word being said.

The court, ultimately denied Mr. Corbett's request to allow an industrial hygienist into the jail and wrote, in summary, that if third parties can hear the content of conversations from meetings or phone calls with their attorneys or legal teams than the government has failed to comply with the court's previous order. Exhibit M, ECF. 895, Order, Dated October 13, 2021.

As of the filing of this motion, Mr. Corbett has never had a confidential meeting with his attorneys or defense team nor has he ever had access to a confidential phone call with his lawyers[3]. Mr. Corbett has sufficient interaction with his legal team but both he and his legal team have, at all times, assumed those interactions are non-confidential. At no time since the inception of this case has the government complied with this Court's order or the long-standing constitutional requirements on which that order is based.

**B. The Constitution Requires Confidential Legal Meetings Between a Criminal Defendant and His Defense Team**

The constitutional requirement that clients have access to confidential meetings with their legal teams has been extensively briefed in the two years this issue has been litigated. The government has never claimed the defendants are *not* entitled to confidential meetings with their attorneys, therefore, only the briefest of summary of the law on this issue is set forth hererin. The guarantee of free access to counsel is particularly important in this particular case because a capital prosecution is "different." *See, e.g., Thompson v. Oklahoma*, 487 U.S. 815, 856 (1988) ("Under the Eighth Amendment, the death penalty has been treated differently from all other punishments.") *Gardener v. Florida*, 430 U.S. 349, 357 (1977) (plurality opinion). The Eighth Amendment requires heightened reliability in capital or potentially capital cases. *See. e.g., Zant v. Stephens*, 462 U.S. 862, 884-885 (1983) *citing Woodson v. North Carolina*, 482 U.S. 280, 305 ("[B]ecause there is a qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case'").

---

[3] Mr. Corbett does not attempt to call his attorneys because of the lack of confidentiality.

Mr. Corbett is a pretrial detainee. As a pretrial detainee he has an undisputed right to effective assistance of counsel. *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). When the constitutional right to counsel is being impinged, judicial intervention into conditions affecting pretrial detainees are less restrictive than those relating to sentenced prisoners. *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Redman v. County of San Diego*, 942 F.2d 1435, 1440-1441 (9th Cir.1991) (en banc). "One of the most serious deprivations suffered by a pretrial detainee is the curtailment of his ability to assist in his own defense." *Wolfish v. Levi,* 573 F.2d 118, 133 (2nd Cir. 1978) (*rev'd on other grounds* in *Bell, supra,* 441 U.S. 520). Inherent in the right to assist in one's own defense is the notion that the defendant must be able to meet and discuss matters with their counsel. "[T]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985).

> [A] policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.

*Procunier v. Martinez*, 416 U.S. 396, 405-406 (1974), *citing Johnson v. Avery*, 393 U.S. 483, 486 (1969).

In its July 8, 2020 order this Court reaffirmed long standing constitutional principles.

## II. This Court Should Issue An Order To Show Cause For Why The Government Should Not Be Held In Contempt For Failure To Comply With Its Previous Order

### A. This Court Has the Authority to Hold The Government In Contempt.

Judicial authority to cite parties for contempt is as old as the courts themselves. *Ex parte Robinson*, 86 U.S. (19 Wall) 505, 510 (1873) ("The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this

power [i.e., the contempt power]."). The power to punish acts of contempt has been recognized as inherent in all courts. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *accord Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980); *Green v. United States*, 356 U.S. 165 (1958); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911); *United States v. Shipp*, 203 U.S. 563 (1906); *In re Terry*, 128 U.S. 289 (1888); *Ex parte Robinson*, 86 U.S. 505 (1873). This inherent authority originates from the necessity for enforcing court orders and judgments, as well as maintaining basic order in the courtroom. "For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their present, and submission to their lawful mandates.'" *Chambers,* supra, 501 U.S. at 43 (1991) (quoting *Anderson v. Dunn*, 19 U.S. 204, 227 (1821).

The Court has "the inherent power to punish for civil or criminal contempt any obstruction of justice relating to any judicial proceeding." *United States v. Soong*, 2015 U.S. Dist. Lexis 118585, at *7, *quoting Lambert v. Montana*, 545 F.2d 87, 88 (9th Cir. 1976). Civil contempt sanctions are "designed to compel future compliance with a court order [and] are considered to be coercive and avoidable through obedience…". *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994). The Supreme Court has long held "that courts have inherent power to enforce compliance with their lawful court orders through civil contempt." *Schillitani v. United States*, 384 U.S. 364, 370 (1966); *citing United States v. United Mine Workers*, 330 U.S. 258, 330-332 (1947) (Black and Douglas, concurring and dissenting in part). The power to hold a party in contempt is a "discretionary power vested in the court whose order has been violated." *In Re Crystal Palace Gambling Hall, Inc*., 817 F.2d 1361, 1364 (9th Cir. 1987). Civil contempt is "wholly remedial" and is not intended to be punitive. Rather, it is meant to coerce compliance with an order of the court. *See Int'l Mine Workers of America v. Bagwell*, *supra*, 512 U.S. at 827. ("Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience."); *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949).

To make a prima facie showing of civil contempt Mr. Corbett need only show that the government failed to comply with a valid court order. *See United States v. Rylander*, 460 U.S. 752, 755 (1983); *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999). Civil contempt

"may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Bagwell*, 512 U.S. at 827; *see also Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947). Once a prima facie case is shown, the burden is on the alleged contemnor to justify its noncompliance "categorically and in detail." *Rylander*, 460 U.S. at 755. In addition, in civil contempt proceedings, intent is not an issue. *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983); *Jim Walker Resources, Inc. v. International Union*, UMW, 609 F.2d 165, 168 (5th Cir. 1980). The absence of intent does not excuse civil contempt because it is a sanction to enforce compliance with an order of the court and does not depend on the state of mind of the respondent. Even good faith on the part of the contemnor is not a defense. *Donovan*, 716 F.2d at 1240. Indeed, civil contempt may be established even though the failure to comply with a court order was unintentional. *Perry v. O'Donnell*, 759 F. 2d 702, 705 (9th Cir. 1995).

### B. The Government Defied This Court's Clear Order

The dispute between the parties regarding confidentiality ultimately brought about this Court's July 8, 2020 order. Exhibit A. It was filed on the docket and served electronically on all parties. To date, the government has done nothing to comply with the order nor has the government contested the order or claimed it invalid.

Mr. Corbett submitted uncontradicted evidence that the attorney-client visiting booths are not confidential. As early as February 4, 2020, the Sacramento County Sheriff's Department admitted the booths were not confidential and suggested defense teams "…lower your voice if it is a concern that someone will hear your conversation." Exhibit K, Correctional Service Grievance Reply Form. In May 2020, the Sheriff's Department outright admitted the booths were 'sound reduced' and not confidential. Exhibit G, Dkt. 482-1, Correctional Service Grievance Reply Form, dated May 6, 2020.

The government subsequently abandoned its arguments to the contrary.

In July 2021 the government stated:

> I also spoke to the jail about an idea that Ms. Daly had, I think, floated in some earlier briefing about using additional sound proof material within the booth itself.
> Jail officials thought that was possible, but the big question there is funding. So I'm working with the Marshal's to see what kind of funding is available.

Exhibit N, Hearing Transcript July 14, 2021 16:6-12.

Mr. Corbett has received no substantive updates on this effort. It appears the government has not heard whether there is any movement on this issue. Exhibit O, emails dated November 3 and November 5, 2021. More than three months have passed and nothing has changed.

As a result, Mr, Corbett asks this Court to issue an order to show cause why the government should not be held in civil contempt because of their failure to comply. Absent action from this Court, the government will continue to deny Mr. Corbett and his co-defendants access to confidential attorney-client meetings and phone calls. Their constitutional rights have been and continue to be violated. Mr. Corbett has filed numerous motions and no fewer than eight status memorandums detailing the lack of confidentiality. Indeed, its most recent writings the government abandoned its prior arguments that the booths were confidential[4]. Yet despite a clear court order and ample proof that conditions at the Sacramento County jail are unconstitutional, the government has done and continues to do nothing.

The government is the only party that has the power to make the changes necessary to comply with the court's order. The government, via the Marshal's Service, can have the defendants moved to federal institutions such as FCI Herlong, the Nevada Southern Detention Center[5], USP Atwater and many others. There is no requirement that some or all of the defendants be housed together. Some of defendants could stay at the Sacramento County jail while others are moved to different facilities.

For those defendants who remain at the Sacramento County Jail the Marshal's service is perfectly capable of arranging confidential meetings in an unused courtroom or other meeting space

---

[4] Presumably the government abandoned these claims because Mr. Corbett submitted proof from the Sheriff's department that the booths are not confidential.

[5] Both Herlong and the Southern Nevada Detention Center have secure housing units, administrative segregation or other facilities in which defendants in this case could be safely housed.

within the courthouse[6]. Mr. Corbett and his legal team are willing to work with the Marshal's service to create a schedule of when Mr. Corbett and his team would be able to meet in the federal building.

### III. Conclusion

For the reasons set forth above, Mr. Corbett asks this court issue an Order to Show Cause why the government should not be held in civil contempt for failure to comply with the July 8, 2020 order and thereafter find the government in civil contempt and direct the government to immediately provide Mr. Corbett and his counsel with access to confidential meetings and phone calls within 72 hours of the Court's Order.

Specifically, Mr. Corbett seeks the following remedies:

1. An order moving him to a facility capable of providing him and his legal team with confidential visits;
2. An order requiring the Marshal's Service, in conjunction with Mr. Corbett and his legal team, creating regularly scheduled confidential meetings in the federal courthouse no less frequently than once a month;
3. An order requiring the Marshals' Service provide Mr. Corbett with access to confidential phone calls with his legal team no less than every two weeks; and
4. Any other remedy this Court deems just and proper.

Dated: November 8, 2021

Richard Novak
Kresta Nora Daly

---

[6] As previously indicated, the 5th floor lock-up facilities cannot be used because that meeting space is not confidential.

Attorneys for Jason Corbett