UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RONALD YANDELL, et al.,<br><br>Defendants. | No. 2:19-CR-00107-KJM<br><br><br><br>ORDER |

   Defendants Ronald Yandell, Daniel Troxell, William Sylvester, Travis Burhop, Donald Mazza, Pat Brady, Jason Corbett, Samuel Keeton, and Justin Petty, currently housed at the Sacramento County Jail (the "Sacramento Jail defendants"), move to challenge the conditions of their confinement. Brant Daniel, housed at California State Prison–Sacramento ("CSP–Sacramento"), joins. The government opposes the motion.

   For reasons explained below, the court GRANTS the motion in part and DENIES it in part. The court's resolution of the motion is based on the environment at prisons and jails prior to the COVID-19 pandemic; while recognizing COVID-19 has significantly changed the ability of counsel to meet with clients in person, the principles embodied in any of the court's resolution below should inform compliance for as long as COVID-19 requires modified prison and jail operations.

/ / / / /

I.  BACKGROUND

   a. Procedural Background

The defendants were indicted on June 14, 2019. ECF No. 25. The indictment alleges defendants conspired to engage in drug distribution and other racketeering activity, including murder, in the California prison system. *Id.* Based on the federal charges and corresponding federal writs, the U.S. Marshals Service moved several defendants who had been in state custody at facilities in California to the Sacramento County Jail, with which the Marshals Service contracts for pretrial detention. Writs of Habeas Corpus ad Prosequendum, ECF Nos. 49-56. Defendant Brant Daniel was moved to CSP–Sacramento as an alternate pretrial detention location. On July 29, 2019, counsel for the Sacramento Jail defendants, excepting Justin Petty who was not yet arraigned, sent a letter regarding conditions at the jail to the Marshals Service. Mot. at 1, ECF No. 189; Ex. A, ECF No. 189-1. The letter requested increased access to counsel, greater confidentiality in attorney visits, and improvements to the ability to review digital discovery, among other things. When the jail did not provide the requested accommodations, the defendants brought the instant motion seeking the same relief from this court. *See generally* Mot. Brant Daniel filed a joinder in the motion. Daniel Joinder, ECF No. 194.

The government opposed the motion. Opp'n, ECF No. 215. Jason Corbett replied on behalf of all the Sacramento Jail defendants. Corbett Reply, ECF No. 247. Brant Daniel replied separately to the government's opposition. Daniel Reply, ECF No. 253.

On October 23, 2019, the court heard oral argument on the motion. The court issued a tentative ruling identifying legal authority on which it would likely rely in ultimately resolving the motion. Tentative Ruling, ECF No. 274. The court ordered the parties to meet and confer to narrow the issues and to file a joint statement identifying issues still in dispute. *Id.* On December 6, 2019, the parties did so. Joint Statement, ECF No. 320. The court resolves defendants' motion based on the parties' current positions as reflected in the joint statement, and in the case of Brant Daniel, the follow-up statements at ECF Nos. 358, 366, 370, 371 and 440. Daniel stipulated with the government and another non-joining codefendant, Michael Torres to a resolution as to confidential legal calls. Daniel Legal Call Stip., ECF No. 443.

b. Defendants' Claims and Government Responses

1. Attorney Visitation

A. Sacramento Jail Defendants

The Sacramento Jail defendants assert their right to counsel is being impinged by the configuration of visiting booths at the Sacramento Jail. All of the Sacramento Jail defendants have at least one lawyer and one investigator; five of them have two attorneys, two investigators, and a paralegal. Corbett Reply at 7. At the time the motion was filed, the defendants were collectively allowed access to a single visiting booth, Booth Q, on 8 West, the floor on which the Sacramento Jail defendants are housed. *Id.* They are now allowed to use an additional booth, Booth R, slightly larger than Booth Q. Joint Statement at 2.

The defendants assert both booths are too small to allow a defendant's entire team to meaningfully meet with its client. *Id.* Booth Q allegedly is too small for both an attorney and an investigator. Mot. at 2. Booth R, slightly larger, may fit two members of a defense team with an additional chair. Joint Statement at 2. The government cites the defendants' alleged past use of attorney visits when in state custody to pass contraband as the reason the Jail does not allow the use of the other booths on 8 West, which have pass-throughs in the plexiglass divider between visitor and inmate. Opp'n at 8. The Jail's policy pre-exists defendants' incarceration there. *Id.* at 7. To allow the defendants to meet in Booth R, which has a pass-through, the Sacramento Jail sealed that pass-through. Joint Statement at 3. Still, given the small size of Booth R, the Sacramento Jail defendants request access to a larger booth, Booth J, which they say would allow them to meet with "most, if not all, of a given defense team." Joint Statement at 3. Booth J has a pass-through and has not been modified to allow access. *Id.*

The Sacramento Jail defendants also claim their attorneys have had to wait in the hall to see their clients because of the limited number of booths to which they have access. Mot. at 3; Corbett Reply at 7. They assert the competition for meeting time in the designated booths will limit the access to their attorneys they require. Corbett Reply at 7. They do not cite any instance in which their access has yet been limited by the small number of available booths.

/ / / / /

3

The defendants further assert the designated booths are not adequately confidential. People outside the booths on either side can allegedly hear what is being said inside when the doors are closed. *Id.* at 6. The Jail has taped off the public visiting booths adjacent to booths Q and R, which has the effect of preventing use of those adjacent booths. Joint Statement at 5. The Sacramento Jail defendants propose padding the walls of booths Q and R. *Id.*

B. CSP–Sacramento

Brant Daniel initially met with his attorneys at CSP–Sacramento in visiting booths that were open to prisoners, guards and other visitors. Daniel Reply at 2. As a result, all conversations with counsel were within earshot of third parties. *Id.* The prison now allows Daniel to meet with his attorneys in fully enclosed booths without pass-throughs. Joint Statement at 7. Daniel asserts confidentiality is still an issue because he must speak with his attorneys through the same phone through which CSP-Sacramento inmates generally conduct family visits, a phone he claims is "routinely monitored and recorded." *Id.* at 8.

The government objects to his assertion the phones are recorded as unsupported speculation. *Id.* Likewise, Daniel believes his conversations with his mitigation specialist are being recorded, as they take place on the same phone. *Id.* His counsel says this impedes him from speaking freely with his mitigation specialist.

2. Discovery Review (Sacramento Jail Defendants)

The defendants assert conditions at the Jail impede their ability to review discovery with their attorneys. Much of the discovery in the case consists of audio recordings of wiretapped phone calls and there is significant video footage as well. Mot. at 8-9; Joint Statement at 3-4. The defendants must view discovery on their attorneys' laptops through the pane of plexiglass separating defendants from visitors in the visiting booths. Mot. at 9.

The visiting booths at the Sacramento Jail do not have electrical outlets. The defendants assert this limits the time they have to review the digital discovery with their attorneys to the length of a laptop's battery. Mot. at 9. The defendants also claim the volume of discovery will necessitate the use of web-based hosting for full viewing, requiring the Jail to provide internet access for defense counsel while they are meeting with their clients. *Id.*; Corbett Reply at

4

8. The defendants propose the Jail provide them with tablets designed for use in institutional settings with which to review discovery. Joint Statement at 4.

The government disagrees that the current conditions at the Jail have a constitutional dimension. Opp'n at 11–12.

### 3. Confidential Phone Calls

#### A. Sacramento Jail Defendants

The Sacramento Jail defendants initially asserted all calls from the jail, including those to their attorneys, were recorded. Mot. at 9. They are now being provided the ability to hold confidential calls with their attorneys. Joint Statement at 6. Given this accommodation, one unspecified defendant still maintains he "must use something that resembles a box to call [his] lawyer[]. Guards and other inmates can hear every word a client says and every word the lawyer says." *Id.* Additionally, some of the Sacramento Jail defendants are not released from their cells to make calls when a lawyer would reasonably be in their office. *Id.*

#### B. CSP–Sacramento

Brant Daniel initially asserted he was not given any confidential legal calls with counsel at all. Joint Statement at 9. The government conceded there was not an unmonitored phone system at CSP–Sacramento. *Id.* At the direction of the court, Daniel and the United States filed a follow-up joint statement detailing efforts made by CSP–Sacramento to provide confidential phone calls. Supp. Joint Statement, ECF No. 358. The initial supplemental statement indicates the government discussed installing a confidential phone booth at CSP–Sacramento with the prison. *Id.* at 1. The government followed up, stating that a confidential phone booth was not feasible at CSP–Sacramento, but that Daniel has been provided more in person attorney visitation to compensate. ECF No. 370. The government maintains that physical access to counsel obviates the need for confidential calls. *Id.* It proposes Daniel can be moved to Kern County Jail in Bakersfield, the only facility able to provide confidential calls. *Id.* Daniel countered that CSP–Sacramento can provide confidential calls by using a staff phone, and requested four calls per month. ECF No. 371.

/ / / / /

5

Daniel also clarified in a separate statement that he has never personally had any communications with the agents of the government and renewed his request to be transferred to the Sacramento County Jail. ECF No. 366.

On April 28, 2020, Daniel, Torres and the government stipulated to increased access to confidential calls at CSP-Sacramento to mitigate the challenges posed by the COVID-19 pandemic. Stip., ECF No. 430. The stipulation did not constitute a waiver of either side's arguments relating to this motion.

### 4. Contact Visitation With Attorneys

#### A. Sacramento Jail Defendants

The Sacramento Jail defendants asserted in their motion that they are not given contact visits with their attorneys. Mot. at 7. The government does not contest this and states the degree of contact granted to visitors is under a policy enacted in 2018, designed to prevent the introduction of contraband into the jail. Opp'n at 7; Decl. of Alex McCamy, Ex. 1. ECF No. 215-1.

#### B. CSP–Sacramento

Similarly, Brant Daniel is not being given contact visits with his attorneys. Daniel Joinder at 4. In its initial opposition, the government cites a policy at CSP–Sacramento intended to prevent the introduction of contraband into the prison. Opp'n at 15; Decl. of Teri Kraemer, Ex. 2, ECF No. 215-2. The parties do not provide any further information in their Joint Statement.

### 5. CSP–Sacramento Additional Conditions of Confinement

Brant Daniel contends guards have searched his cell while he was not there and read his legal papers and mail. Joint Statement at 9. The government objects to this belief as unsupported by evidence. *Id.* Daniel asserts he has not been given appropriate medical care for his spinal problems. *Id.* at 10. He also states he is incarcerated in a unit housing mentally ill inmates who yell and bang on the walls throughout the night, and that such treatment is unconstitutional. *Id.* at 10-11.

/ / / / /

/ / / / /

6

II. **LEGAL STANDARD**

Holding pretrial detainees in conditions of confinement that amount to punishment of the detainee violates due process. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Conditions of pretrial detention reasonably related to a legitimate governmental objective do not, without evidence of an intent to punish, amount to "punishment." *Id.* at 538–39.

Generally, federal inmates and pretrial detainees may only challenge the conditions of their confinement pursuant to an action brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971) (a "*Bivens* action"). While defendants currently also are serving prison terms imposed by the State of California, the court considers their claims here only in light of their federal pretrial detention. A *Bivens* action is filed as a separate civil action under 42 U.S.C. § 1983; such claims cannot be entertained in the inmate's criminal case. *See United States v. Luong*, No. CR 99-433 WBS-GGH, 2009 WL 2852111, at *1-2 (E.D. Cal. Sept. 2, 2009); *United States v. Hollis*, No. 08-276 OWW, 2009 WL 902062, at *1 (E.D. Cal. April 1, 2009).

The exception to this rule is an inmate's challenges to conditions of confinement that impinge his or her ability to consult with counsel or exercise other trial rights. *See United States v. Loera*, No. CR 13-1876 JB, 2017 WL 3098257, at *27-28 (D.N.M. June 22, 2017); *see also United States v. Wade*, No. 3:07-cr-00111-RRB-JDR, 2009 WL 3837151, at *1 (D. Alaska Nov. 13, 2009). Allowing prisoners to seek redress for deficiencies in the conditions of their confinement unrelated to their trial rights would contravene the purposes of the Prison Litigation Reform Act's administrative exhaustion requirement. *Ontiveros v. Los Angeles County*, 611 F. Supp. 2d 1090, 1094 (C.D. Cal. 2009) (discussing applicability of PLRA exhaustion requirement to "all inmate suits about prison life").

"[E]ven when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security." *Bell*, 441 U.S. at 547 (citing *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 129 (1977); *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Procunier v. Martinez*, 416 U.S. 396, 412-14 (1974)). "This principle

7

1 applies equally to pretrial detainees and convicted prisoners." *Bell*, 441 U.S. at 546. "Prison
2 administrators therefore should be accorded wide-ranging deference in the adoption and
3 execution of policies and practices that in their judgment are needed to preserve internal order and
4 discipline and to maintain institutional security." *Id.* at 547 (citations omitted). A prison
5 regulation that impinges inmates' constitutional rights is valid if it is reasonably related to a
6 legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Although distinct, the
7 tests for the validity of prison regulations impinging the rights of pretrial detainees and prisoners
8 under *Bell* and *Turner* are often applied in tandem. *See, e.g.*, *Bull v. City & Cty. of San*
9 *Francisco*, 595 F. 3d 964, 971 (9th Cir. 2010) (applying *Bell* and *Turner* to San Francisco jail
10 strip search policy).

11     III.    DISCUSSION
12         a. Attorney Visits

13         "The right to effective assistance of counsel is […] the right of the accused to
14 require the prosecution's case to survive the crucible of meaningful adversarial testing." *United*
15 *States v. Cronic*, 466 U.S. 648, 656 (1984). "The core of this right has historically been, and
16 remains today, 'the opportunity for a defendant to consult with an attorney and have him
17 investigate the case and prepare a defense for trial.'" *Kansas v. Ventris,* 556 U.S. 586, 590 (2009)
18 (citing *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)). "Not every restriction on counsel's time
19 or opportunity to investigate or to consult with his client or otherwise prepare for trial violates a
20 defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983)
21 (citation omitted). The Sixth Amendment does not guarantee a meaningful relationship with
22 counsel. *Id.* at 13–14.

23         1. Sacramento Jail Defendants
24         The defendants are correct that they have a Sixth Amendment right to
25 meaningfully consult with their attorneys. At the same time, the argument that this right requires
26 meetings with multiple attorneys and investigators at the same time is not a necessary corollary.
27 The defendants do not provide, and this court has not located, any authority requiring expressly or
28 by analogy that they have access to larger visiting booths. Moreover, nothing in the current

8

Case 2:19-cr-00107-KJM Document 930-1 Filed 11/08/21 Page 9 of 16
Case 2:19-cr-00107-KJM Document 310 Filed 07/08/20 Page 9 of 16

record demonstrates Sacramento Jail defendants have suffered individual, articulable instances in which they have been denied visits with their counsel. Because defendants can meet with counsel in a meaningful way when scheduled, albeit with occasional delays, and are not being denied access, defendants' ability to meet with counsel appear at this point to satisfy the required constitutional standard.

Additionally, there is a rational connection between the Jail's physically sealing the pass-through in a visiting booth and its interest in preventing the ingress of contraband. *Turner*, 482 U.S. at 89 (citing *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). That interest is supported by the particular allegations in the case, founded on an agent's sworn affidavit. Compl., ECF No. 1 at 53–54. While the Jail has provided an additional sealed booth since defendants first filed their motion, defendants ask for still more visiting booths to be similarly sealed. Joint Statement at 2. It appears that accommodating this request would impact other defendants housed on 8 West, which must be considered when evaluating the Jail's regulation. *Turner*, 482 U.S. at 89 ("A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"). The current record does not support the court's ordering a reallocation of jail resources when defendants can meet adequately with their counsel in the two booths now available. *Cf. id.* (citing *Pell,* 417 U.S. at 822).

Defendants continue to contend their visits with counsel in visiting booths Q and R are not confidential. Joint Statement at 5. They suggest the mounting of sound-dampening baffle material in the visiting booths to ensure confidential visits. *Id.* However, defendants have advanced no admissible evidence that allows the court to conclude that communications in the booths are in fact not confidential in the first place. They attach an unauthenticated study, now nearly five years old, by an industrial hygienist who addressed conditions on a separate floor of the Jail; the study is hearsay and inadequate nonetheless to support their contention. Corbett Reply, Ex. B.

/ / / / /

/ / / / /

9

### 2. CSP–Sacramento

Brant Daniel is now allowed to meet with his attorney in a fully-enclosed visiting booth. Joint Statement at 7–8. As noted, he claims the phones through which he conducts visits with his attorney are "routinely monitored and recorded" and "attorney-client meetings are not believed to be confidential." *Id.* at 8. Here as well, however, there is no evidence in the record on this point.

### 3. Conclusion

The court reiterates the constitutional standards set forth in its tentative ruling, without making any particularized corrective order at this stage of the proceedings. The Sixth Amendment protects the right of a pretrial detainee to communicate confidentially with his attorney. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1195–96 (9th Cir. 2017). The right of confidential communication with attorneys is also protected by the First Amendment to prevent a "chilling effect" on attorney-client communications. *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1208 (9th Cir. 2017). Because "[a] criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense" and "nearly sacrosanct" (*Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014)), communications during in-person visits between the defendants and their attorneys must not be audible to other persons, including those outside a visiting booth. Attorney–client communications must not be recorded or monitored.

### b. Discovery Review

Defendants specifically request (a) that the visiting booths in the Sacramento Jail be rewired to provide sufficient power for their attorneys' laptops without the need to run an extension cord from the door of the visiting booths; (b) that the Jail provide internet access so digital discovery may be hosted remotely and available for review in the visiting booths; and (c) that the defendants be given approved tablets or laptops to review digital discovery themselves.

### 1. Laptops (Sacramento Jail Defendants)

Although defendants assert they anticipate discovery will include 1,800 hours of audio recordings, the government says it has never made a representation to this effect to defense

10

counsel. *See* Joint Statement at 3-4. Regardless, the record contains no evidence to back the defense estimate, provided in support of their request for sufficient power to run laptops.

While defendants claim the audio recordings, however long, "cannot be printed," the court understands the audio recordings are of conversations gleaned from wiretapped cell phones. Such recordings could be transcribed for defendants' review and at this point the record does not suggest transcription is infeasible. Video discovery may raise different concerns, but at this point nothing in the record demonstrates an exceptional volume of video evidence that cannot be viewed given the current attorney-client visitation arrangements and typical laptop battery power.

At least one other district court has found no constitutional violation in the denial of a special accommodation to extend the battery life and storage capacity of counsel's laptop. In *United States v. Rivera*, the court denied a motion for a standing order allowing the defendant's attorney's laptop into U.S.P. Florence, a maximum-security federal prison in Colorado. 83 F. Supp. 3d 1154, 1156 (D. Colo. 2015). The court upheld the Bureau of Prisons regulation barring laptops in the facility as "neither unconstitutional nor unreasonable—given the unique security needs inherent to the custodial milieu that is [U.S.P. Florence]—to require counsel to proceed as lawyers did for centuries prior to the late 20th Century invention of the laptop computer." *Id.* While the custodial facility in the *Rivera* case is a "supermax" facility with heightened security considerations, the notion that defense counsel in this case have alternatives to supplement the allowed use of laptops is sound. The particular issues defendants here raise, with laptop battery life and storage capacity to review voluminous digital discovery, do not have a constitutional dimension, particularly given the availability of additional laptop batteries and the purchase of digital storage media.

The same logic applies to the defendants' insistence that discovery will be sufficiently voluminous that they will need to use a cloud-based storage solution, necessitating internet access where counsel meets with the defendants. Defendants may obtain additional storage media if necessary.

/ / / / /

11

2. Tablets and Internet Access

As to the request for institutionally appropriate tablets so defendants may review digital discovery in their cells, the court will not disturb the limits placed on the review of discovery materials by the Jail or CSP–Sacramento. There is a Sixth Amendment right for incarcerated pro se defendants to be afforded reasonable access to "law books, witnesses, or other tools to prepare a defense." *Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985) (habeas corpus petitioner successfully alleged violation of Sixth Amendment right from denial of pretrial access to legal materials when proceeding pro se); *see also Kaiser v. County of Sacramento*, 780 F. Supp. 1309, 1313–15 (E.D. Cal. 1991) (holding *Milton* and its progeny require "some access" for pro se pretrial detainees.). The court is aware of no authority providing that this right extends to the physical possession of discovery by custodial defendants who are represented by counsel. In addition, the right is not unqualified even when it applies; a criminal defendant's right to "other tools to prepare a defense," including discovery, "must be balanced against the legitimate security needs or resource constraints of the prison." *United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995).

In *United States v. Youker*, the Ninth Circuit held the district court did not abuse its discretion by denying a self-represented defendant an order allowing him to have all discovery physically in his cell, including sensitive statements by cooperating co-defendants. 718 Fed. Appx. 492, 495 (9th Cir. 2017). The Ninth Circuit upheld the trial court's decision not to "micromanage jail officials" who were concerned defendant could disseminate sensitive information to harass or harm co-defendants. *Id.* (citing *Sarno*, 73 F.3d at 1491).

Similar concerns as in *Youker* are at play here, where defendants are accused of being members of an ongoing criminal enterprise willing to order or commit murder to enforce loyalty. Given that these defendants are represented by counsel who have a duty to represent their interests by diligently reviewing discovery on behalf of their clients, the defendants will not be deprived of the defense guaranteed by the Sixth Amendment if they are not personally able to review discovery in their cells.

/ / / / /

Accordingly, if the Sacramento Jail and CSP–Sacramento opt not to provide the defendants internet-equipped tablets, it is not a constitutional injury necessitating court intervention.

### c. Confidential Phone Calls

#### 1. Sacramento Jail Defendants

The Sacramento Jail defendants agree they are now being given access to confidential phone calls with their attorneys. As to their claim that "one of the defendants must use something that resembles a box to call their lawyers" such that guards and inmates can hear the entire conversation (Joint Statement at 6), they do not specify which defendant is being given the "box" phone and offer no evidence on the record. The court will not act in the absence of a record or sufficient detail to understand the situation.

The Sacramento Jail defendants also claim some of them are released from their cells at times when their attorneys are not in the office, before or after a typical work day. Corbett Reply at 9; Joint Statement at 6. The current record does not make clear whether this renders calls to counsel impossible or merely difficult to schedule. Again, there is no admissible evidence on this point and the specific defendants who suffer from this problem are not identified in the parties' most recent filing.

In addition, the filings do not rely on any legal authority. While inmates do have a constitutional right to unmonitored phone calls with their attorneys, *see Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977), it is not clear whether there is a corresponding right to "reliable access" as urged by the defendants, Corbett Reply at 9. Bottom line, the Jail now appears generally to provide the required confidential calls. The defendants have the burden of showing "the real possibility of interference [with the right to counsel], not just inconvenience." *United States v. Folse*, No. CR 15-2485 JB, 2016 WL 3996386, at *23 (D.N.M. June 15, 2016). Without introducing any admissible evidence, they have not carried this burden.

#### 2. CSP–Sacramento

Brant Daniel initially asserted, and the government conceded, that he was not receiving confidential legal calls with counsel. Joint Statement at 9. Daniel and the government

13

stipulated that CSP–Sacramento would provide Daniel with four 45-minute long unmonitored phone calls per month with his attorney or other defense team members. Daniel Legal Call Stip. The court assumes this issue is resolved.

### d. Contact Visitation with Attorneys

#### 1. Sacramento Jail Defendants

The Ninth Circuit has recognized a Fourteenth Amendment right to access the courts that includes contact visitation with counsel. *Ching v. Lewis*, 895 F.2d 608, 610 (9th Cir. 1990). Like other constitutional rights enjoyed by pretrial detainees, this right may be abridged by prison regulations when such regulations are reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. As noted, the Sacramento Jail's policy is designed to prevent the introduction of contraband into the jail. *See* McCamy Decl. ¶ 4, ECF No. 215-1. Here, the allegations against all the defendants turn heavily on the possession of and trade in contraband in the prison system, although only defendant William Sylvester is specifically charged with being a physical point of ingress for contraband into a prison in this complaint. *See* Compl., at 53–54. While no defense counsel in this case is suspected of having ever acted as a conduit for contraband or planning to so act, that they are not under suspicion does not vitiate the Jail's legitimate concern supporting a blanket policy of prevention. Courts have long recognized the difficulty of the problem of contraband in prisons and deferred to prison regulations imposed to prevent its introduction. *See, e.g., Block*, 468 U.S. at 588–89 ("We can take judicial notice that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country."). The Sacramento Jail defendants' request for contact visits with their counsel will be denied.

#### 2. CSP–Sacramento

The policy barring contact visits with high security prisoners at CSP–Sacramento is also designed to prevent the smuggling of contraband. Kraemer Decl. ¶ 3. Brant Daniel is alleged to be a member of the same conspiracy with which the other defendants are charged. The policy governing his attorney visits is based on the same legitimate penological interest, and the court will not disturb the policy.

e. <u>CSP-Sacramento Additional Conditions of Confinement</u>

As noted, Brant Daniel believes that guards have searched his cell and read his legal papers and mail outside of his presence. Joint Statement at 9. The government objects that this belief is without evidentiary support. Like many other issues raised in the motion, the record is not adequate for the court to find such a search has taken place. That said, the law is settled that prison officials must not read legal mail addressed to pretrial detainees or convicted prisoners. *Mangiaracina v. Penzone*, 849 F.3d 1191, 1195–96 (9th Cir. 2017), *see also Nordstrom*, 762 F.3d at 910. If prison officials must inspect or examine legal papers and mail for contraband, they must do so in the presence of the prisoner and must not read those papers for content.

Daniel also raises two concerns that are not shared by the Sacramento Jail defendants. He is allegedly not receiving reasonably adequate medical care at CSP–Sacramento in violation of the Eighth Amendment. He also is incarcerated in a unit at CSP–Sacramento that houses mentally ill inmates who keep him awake by banging and screaming throughout the night. "As several courts have recognized, the proper procedure to redress a defendant's grievances regarding treatment within a jail or prison is to file a civil suit against the relevant parties pursuant to 42 U.S.C. § 1983, rather than a motion in his criminal case." *Luong*, 2009 WL 2852111, at *1 (collecting cases). Here, the connection of these last two complaints to the exercise of Daniel's trial rights is too attenuated to be within the court's jurisdiction over his criminal case. These conditions are properly challenged in a separate civil suit providing for notice to the proper parties, the tools of civil discovery, and adequate redress. The court cannot address these conditions of Daniels' confinement in this criminal case.

IV. <u>CONCLUSION</u>

For the foregoing reasons, the court ORDERS as follows:

1. In-person visits with attorneys must be conducted in a way that the content of conversations is not audible outside the visitation booth.
2. Defendants' calls to attorneys must not be recorded.

/////

15

3. Defendants must be allowed to make phone calls to their attorneys in a way that prevents third parties from overhearing them.

4. Legal mail may be opened and inspected in front of the defendants, but must not be read for content, as required under *Nordstrom,* 762 F.3d at 910. If legal papers must be inspected for contraband, the inspection must happen in the presence of the defendant to allow verification that the papers are not being read for content.

As to the balance of defendants' motion, it is DENIED without prejudice to refiling to the extent the court has jurisdiction to resolve complaints in this criminal case and those complaints are supported by admissible evidence. This order resolves filings ECF No. 189 and 194.

IT IS SO ORDERED

DATED: July 7, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE